**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| STANLEY and CONNIE C., Individually | ) | |
| and as Next Friends of M.C., a minor, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 1:07-CV-169-PRC |
| | ) | |
| M.S.D. OF SOUTHWEST ALLEN | ) | |
| COUNTY SCHOOLS and GREEN-WEST | ) | |
| ALLEN SPECIAL EDUCATION | ) | |
| COOPERATIVE, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Enforce Stay-Put Placement [DE 41], filed by Plaintiffs Stanley and Connie C., Individually and as Next Friends of M.C., a minor, on November 28, 2007.  Defendants filed their Response in Opposition on December 6, 2007, and Plaintiffs filed a Reply on December 13, 2007.  As set forth in this Order, the Court denies the motion, finding that by agreement of the parties, Defendants' responsibility to pay for a portion of M.C.'s private placement terminated on December 4, 2006.

**PROCEDURAL AND FACTUAL BACKGROUND**

The Individuals with Disabilities Education Act ("IDEA") guarantees a free and appropriate public education ("FAPE") to every disabled child who attends a public school that receives public funds.  *See John M. v. Bd. of Educ.*, 502 F.3d 708, 711-12 (7th Cir. 2007).  When a child's parents believe that the child's school is failing to provide her with a FAPE, they can request an administrative hearing at the state level and later seek  review of the hearing officer's determination in federal district court.  *See* 20 U.S.C. § 1415(f)-(g), (i)(2).

In August 2004, the parties settled the first case brought by Plaintiffs against Defendants pursuant to a written agreement (the "2004 Agreement").  The 2004 Agreement addressed M.C.'s education for the 2004-2005 school year, the summer of 2005, and the 2005-2006 school year. Among many other specifications, the 2004 Agreement provided for Defendants to pay for up to fifteen hours per week for M.C. to attend the Fort Wayne Center for Learning ("FWCL") for the 2004-2005 and 2005-2006 school years.  In addition, Defendants were to pay for up to fifteen hours per week at FWCL for the summer of 2005 for a four-week period, which was to be considered the "extended school year."  On November 28, 2005, in a Motion to Dismiss to the Indiana Department of Education Division of Special Education in the course of an Article 7 hearing, Plaintiffs described the 2004 Agreement's provisions for private programming as "obviously . . . NOT a full-time placement but rather compensatory educational services for the student," which Plaintiffs sought because they believed Defendants were not providing M.C. with FAPE.  Def. Br., Exh. A, p. 4197 (Adm. Record) (emphasis in original).

On May 31, 2006, nearing the expiration of the 2004 Agreement, Defendants proposed an extended school year services program for M.C. for the summer of 2006 in a public school. Plaintiffs rejected Defendants' proposal.

On June 5, 2006, Plaintiffs initiated the Article 7 due process hearing underlying the instant matter, seeking administrative review of Defendants' education plan for M.C.  In Indiana, the state administrative review begins with an administrative hearing presided over by an independent hearing officer ("IHO") appointed by the Indiana Department of Education.  *See L.B. ex rel. Benjamin v. Greater Clark County Schs.*, 458 F. Supp. 2d 845, 850-51 (S.D. Ind. 2006).  As an initial matter in the administrative proceedings, the IHO issued an order on June 16, 2006, defining

M.C.'s stay-put placement for extended school year services for the summer of 2006 as fifteen hours of private instruction per week, for four weeks, at FWCL. In coming to this conclusion, the IHO noted that following two prehearing conferences on the issue, neither party had provided a copy of M.C.'s current IEP or a proposed or agreed IEP for 2006-07. Therefore, the stay-put placement for the summer of 2006 was based on the provisions for the extended school year services for the summer of 2005 as contained in the parties' 2004 Agreement.

Subsequently, the parties reached an agreement regarding M.C.'s stay-put "educational placement" following the extended school year services provision for the summer of 2006, and the IHO documented their agreement, among other things, in an August 15, 2006 Order on Prehearing Conference:

> Parties entered into a mutual agreement concerning the educational placement of the Student *during the pendency of this matter*. This agreement follows:
>
> In addition to any other services offered by the School, the Student shall be entitled to receive eight clock hours of instruction per week at the Center for Learning ([FWCL]) through August 22, 2006. From the date of this Order, until and including August 22, 2006, the School shall be responsible for the cost of such services. Beginning on and including August 23, 2006, *and until this matter is resolved, either through resolution between the parties or by Order of the IHO*, the Student shall continue to receive up to eight clock hours per week at the [FWCL]. However, the School shall be responsible for the cost of four hours per week of instruction at the [FWCL].

Pl. Br., Exh. B (emphasis added).

The following day, the IHO received a facsimile transmission from Plaintiffs, requesting that the IHO clarify the August 15, 2006 Order as to the dates M.C. was to receive private school services and at whose expense. Specifically, Plaintiffs expressed that they had only agreed to share the cost of the private services during the period of the continuance but that they did not agree to share the cost during an appeal to the Indiana Board of Special Education Appeals, which is the state

3

of Indiana's second tier of administrative review in such cases, or state or federal court.  On August

21, 2006, Defendants responded, reiterating that they "strongly disagree[d] that after-school

instruction at a private institution is part of this Student's 'current educational placement'" pursuant

to 20 U.S.C. § 1415(j).  Def. Br., Exh. A., p. 4363 (Adm. Record).  As a result, the IHO issued an

Order Restating Dates for Private Services on August 30, 2006, which provided in relevant part:

> As voluntarily agreed to by the School, the Student is to receive eight (8) hours per
> week of private school instruction, at the School's expense, from the date of the
> previous order, being August 15, 2006, until and including September 25, 2006.
> From September 26, 2006, to and including November 4, 2006, as voluntarily agreed
> to by the School, the Student is to receive four (4) hours per week of private
> instruction at the School's expense.
> *Any private school instruction to be provided the Student at the School's expense*
> *beyond November 4, 2006, if any, shall be a matter to be decided by the IHO as a*
> *result of the due process hearing currently scheduled in this matter.*

Pl. Br., Exh. C (emphasis added).

Finally, on October 25, 2006, the parties signed an agreement extending the IHO's order for

thirty days, agreeing that the IHO's order of

> August 30, 2006, shall remain effective until December 4, 2006. [Plaintiffs] have
> agreed to pay for the charges incurred at the Fort Wayne Center for Learning from
> December 5, 2006 through the date of the Hearing Officer's decision.  However,
> [Plaintiffs] retain the right to seek recovery of those amounts from the School if the
> [Plaintiffs] prevail.  This agreement has no impact on any other rights that [Plaintiffs]
> may have.

Pl. Br., Exh. D.  The District has not paid for any private services for M.C. since December 4, 2006.

On January 31, 2007, the IHO issued his Decision and Order.  M.C.'s parents paid for M.C.'s

instruction at FWCL from January 31, 2007, to July 30, 2007.  After July 2007, M.C.'s specialized

instruction became unavailable at FWCL because M.C.'s instructor left.  Since September 5, 2007,

M.C.'s parents have paid for her instruction at Integrated Learning Systems ("ILS"), an organization

that began providing the individualized services that M.C. had previously been receiving from FWCL.

Unsatisfied with the IHO's January 31, 2007 decision, Plaintiffs appealed to the BSEA. The Board upheld the IHO's decision, and Plaintiffs initiated suit in this Court.

## ANALYSIS

Plaintiffs bring the instant motion to enforce M.C.'s stay-pay placement under 20 U.S.C. § 1415(j) of the IDEA, which is titled, "Maintenance of current education placement" and provides, in relevant part, that

> during the pendency of any proceedings conducted pursuant to this section, *unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child*, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j) (emphasis added). The stay-put placement remains in effect through the appeal of an administrative due process hearing in federal district court. *See Kari H. by and through Dan H. v. Franklin Special Sch. Dist.*, 125 F.3d 855, 1997 WL 468326, at *6 (6th Cir. 1997); *Anderson v. Dist. of Columbia*, 877 F.2d 1018, 1023 (D.C. Cir. 1989); *Z.F. v. South Harrison Cmty. Sch. Corp.*, No. 4:04-CV-0073, 2005 WL 2373729, *21 (S.D. Ind. Sept. 1, 2005).

The Seventh Circuit has recognized that the term "educational placement" is not statutorily defined and has adopted a fact-driven analysis. *See John M.*, 502 F.3d at 714. This flexible approach requires that "within the term there must be 'enough room to encompass [the child's] experience.'" *Id*. (citing *Bd. of Educ. v. Illinois State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996)). "Respect for the *purpose* of the stay-put provision requires that the former IEP be read at a level of generality that focuses on the child's 'educational needs and goals.'" *Id*. (citing *Bd. of Ed.*,

103 F.3d at 548). "A child's interim educational regime must produce as closely as possible the overall educational experience enjoyed by the child under his previous IEP." *Id*. at 715.

In the motion, Plaintiffs assert that the parties' agreement as to the payment of private services for M.C. as memorialized in the IHO's August 15, 2006 order should be enforced as M.C.'s "then-current educational placement," reasoning that Defendants agreed to an educational placement for M.C. to last "during the pendency of this matter" and "until this matter is resolved." *See* Pl. Br., Exh. B (IHO's August 15, 2006 Order). Plaintiffs contend that Defendants "unilaterally stopped providing these services, in violation of the parties' agreement and the IDEA's stay-put provision." Plaintiffs reason either (1) that the parties' 2006 agreements as memorialized by the IHO's orders should be interpreted as requiring Defendants to pay for the private placement during the appeal of the IHO's decision to the BSEA and the district court or (2) that the Court should find that the agreements for payments for private placement "during the pendency of this matter" in fact constituted M.C.'s "then-current placement" for purposes of stay-put such that Defendants should be required to continue to pay for four hours of instruction at FWCL or its equivalent during the appeal following the IHO's January 31, 2007 Decision and Order. Specifically, Plaintiffs ask that Defendants be required to pay for four hours of private instruction at FWCL from January 31, 2007, through July 30, 2007, and for four hours of private instruction at ILS or a similar program from September 5, 2007, until this Court reviews and rules upon the IHO's decision.[1]

Notably, Plaintiffs do not argue for the enforcement of M.C.'s educational placement for the 2004-2005 and 2005-2006 school years as set forth in the 2004 Agreement as her "current

---

[1] In their Brief, Plaintiffs request that Defendants be required to pay for four hours of private tutoring per week. However, in their Reply, Plaintiffs, asserting that they have realized that the initial agreement was for Defendants to pay for eight hours of private tutoring per week, amend their request, asking for Defendants to pay between four and eight hours of private tutoring per week. Because the Court denies Plaintiffs' motion, this discrepancy need not be resolved.

educational placement" for purposes of stay-put.  For those two academic years, Defendants had agreed to pay up to fifteen hours per week of after-school instruction for M.C. at FWCL, in combination with her attendance in public school programming to conclude at 2:15 p.m. or on the regular daily schedule for typical students.  It appears that Plaintiffs cannot rely on the 2004 Agreement as M.C.'s current educational placement because she is no longer enrolled in the public school system.  This leaves Plaintiffs only the option of seeking the continued payment of four hours a week by Defendants.

Because Plaintiffs are not seeking to enforce M.C.'s 2005-2006 prior year placement but rather seek enforcement of the payment agreement entered into by the parties in August 2006 and modified in October 2006, the key consideration for the Court is the language of the parties' agreements, which Plaintiffs agree are the basis for the Court's decision.  Reaching such an agreement with the opposing party to redefine a child's educational placement is a permitted practice under the IDEA.  *See* 20 U.S.C. § 1415(j) (establishing that the previous placement must be maintained "unless the State or local agency and the parents otherwise agree").  Accordingly, the Court turns to the terms of the parties' agreements, as memorialized in the IHO's orders in the summer and fall of 2006.  Did, as Plaintiffs allege, Defendants agree to pay for four hours of private tutoring until the termination of the litigation of this case, including through the proceedings in federal court?  Or, as Defendants argue, were Defendants' payments to terminate on December 4, 2006?  The Court finds Defendants' arguments more persuasive and supported by the evidence of record.

First, in June 2006, the IHO issued an order providing for M.C.'s stay-put placement during the summer of 2006, which was essentially identical to her placement the previous summer under

7

the 2004 Agreement.  In their reply brief, Plaintiffs argue that, because M.C.'s extended school year placement was at FWCL during the summer of 2006, the private instruction at FWCL constitutes her stay-put placement for the subsequent academic year.  However, the stay-put placement for the summer of 2006 does not inform the Court's analysis as to M.C.'s stay-put placement for the remainder of these proceedings.  As noted in the procedural background, M.C.'s stay-put extended school year placement for the summer of 2006 was based entirely on her 2005 extended school year placement as set forth in the 2004 Agreement.  The 2005 extended school year placement in the 2004 Agreement was separate from M.C.'s placement during the academic years of 2004-2005 and 2005-2006.  Moreover, the payment agreement for extended school year stay-put placement in the summer of 2006 of fifteen hours a week for a limit of four calendar weeks is substantially different than the subsequent express agreements by the parties in August and October 2006 for payment by Defendants for eight or four hours of private instruction.  And, tellingly, although the placement for the summer of 2006 was based on the 2004 Agreement, Plaintiffs are not seeking enforcement of the remaining provisions of the 2004 Agreement related to M.C.'s prior academic-year placements for the purposes of her academic-year stay-put during the pendency of this case.  Plaintiffs seek enforcement only of the August and October agreements between the parties, to which the Court now turns.

At the conclusion of the summer and with the approach of the 2006-2007 school year, the parties came to an agreement concerning M.C.'s stay-put placement and Defendants' payment for private services.  As a result of the agreement, the IHO issued an order on August 15, 2006, addressing M.C.'s placement "during the pendency of this matter" and ordering that (1) until August 22, 2006, M.C. was entitled to eight hours of services at FWCL at the expense of Defendants and

(2) from August 23, 2006, and "until this matter is resolved, either through resolution between the parties or by Order of the IHO," M.C. would continue to receive eight hours of instruction at FWCL, with Defendants responsible for the cost of four of those hours.  Pl. Br., Exh. B.  The email documentation attached to Plaintiffs' brief explains that Plaintiffs agreed to pay for half of the eight hours of weekly instruction after August 22, 2006, in exchange for Defendants' agreement to an extension of the hearing date.

After a request for clarification of that order by Plaintiffs, on August 30, 2006, the IHO issued an Order, explaining that Defendants would pay for eight hours a week of private instruction from August 15, 2006, through September 25, 2006, but that from September 26, 2006, to and including November 4, 2006, Defendants would pay for four hours of private school instruction per week.  The order then specifically explained: "Any private school instruction to be provided the Student at the School's expense beyond November 4, 2006, if any, shall be a matter to be decided by the IHO as a result of the due process hearing currently scheduled in this matter."  Pl. Br., Exh. C.  Finally, on October 25, 2006, the parties executed an agreement extending the terms of the IHO's August 30, 2006 order from November 4, 2006, through December 4, 2006.  In addition, Plaintiffs specifically agreed to pay for the FWCL charges from December 5, 2006, through the date of the IHO's decision.

There is no express agreement by the parties for Defendants to resume paying for a portion of M.C.'s private placement following the IHO's decision.  In fact, the language of the IHO's August 30, 2006 order clarifies that whether Defendants would be required to pay for any of M.C.'s private school expenses beyond November 4, 2006 (and then December 4, 2006 by agreement of the parties), if any, would be determined by the IHO in his decision, which is now being appealed

by Plaintiffs.  The parties' agreement that extended the order to December 4, 2006, placed the burden for paying for the private services from December 5, 2006, through the date of the IHO's order on Plaintiffs with the right to seek recovery of those fees from Defendants if the Plaintiffs prevailed before the IHO.  Although the October 25, 2006 agreement also indicated that the terms of the agreement had "no impact on any other rights that [Plaintiffs] may have," the parties did not modify the portion of the IHO's Order providing that whether or not Defendants would be required to reimburse Plaintiffs following November 4, 2006 (and then December 4, 2006), would be determined by the IHO.  Consistent with the agreement's language, whether Defendants might be required to resume paying for a portion of M.C.'s private placement following the IHO's decision will only be known once the Court has decided this appeal of that decision.

Plaintiffs' own characterization in their briefs of the terms of the agreements and orders is telling.  In the opening brief, Plaintiffs cite the IHO's August 15, 2006 order only the language "during the pendency of this matter" and "until this matter is resolved," failing to include the modifying clause–"either through resolution between the parties or by Order of the IHO."  Pl. Br., Exh. C.  Plaintiffs ignore this limiting language in their analysis.  Similarly, in their Reply Brief, Plaintiffs again argue that the parties' agreement to fund weekly private instruction "expressly lasts throughout the pendency of this matter."  Pl. Reply, p.2.  Plaintiffs do not address Defendants' response arguments that the IHO's orders and the parties' agreements provided specific time periods for Defendants' payments, and again, Plaintiffs do not acknowledge that the IHO's order provides that the payments will be made "until this matter is resolved, either through resolution between the parties or by Order of the IHO."

Nor is the Court convinced by Plaintiffs' argument in their reply brief that the base agreement between the parties was that Defendants would pay for eight hours of private instruction weekly during the pendency of this matter, including through any appeals, and that the reduction of payment from eight hours to four hours and Plaintiffs' payment from December 5, 2006 through the IHO's decisions were only for a period of time carved out as a result of bargaining for continuances by Plaintiffs. This position is belied by the language in the IHO's August 30, 2006 Order explicitly providing that "[a]ny private school instruction to be provided the Student at the School's expense beyond November 4, 2006, if any, shall be a matter to be decided by the IHO as a result of the due process hearing currently scheduled in this matter." Pl. Br., Exh. C. The November 4, 2006 date was extended to December 4, 2006, by agreement of the parties on October 25, 2006.

In addition to the plain language of the parties' agreements and the IHO's orders, Defendants have produced other documents demonstrating that they did not agree that paid tutoring at FWCL was part of M.C.'s educational placement. On May 30, 2006, Defendants informed Plaintiffs by letter that they believed M.C.'s educational placement did not include FWCL because

> . . . when a child is enrolled in a private school, at a parent's urging, pursuant to a settlement agreement *and* there has been no "determination that the [school] either cannot or has not fulfilled its obligation to provide a free appropriate public education to the disabled child in the public school," the private placement does *not* constitute the "current educational placement" . . . .

Def. Br., Exh. B, p. 2 (citing *Casey K. v. St. Anne Comty. High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005) (Sykes, J., dissenting). Defendants went on to express that "[t]he school continues to believe, as it always has, that it can provide the student with an appropriate education and would invite the parents to reconsider its offer for [extended school year] 2006." *Id.*, p. 4. In the

11

Defendants' "Answer to Plaintiffs' Request for Hearing" dated June 15, 2006, Defendants indicated that

> . . . there is no basis for invoking "the stay-put provisions of Article 7 and the IDEIA" to require the School to provide funding for services provided by the Fort Wayne Center for Learning.  This is true for two independent reasons.  First, the Student attended the public school for the entire school day during the 2005-2006 school year.  Clearly, her current educational placement is the public school, not a private institution . . . .
> Second, while it is true that the Student has previously received limited instruction at the Fort Wayne Center for Learning, at School expense, that instruction was provided pursuant to a prior settlement agreement and has been considered compensatory education.

Def. Br., Exh. A, p. 3990-91 (Adm. Record).  Finally, on July 7, 2006, Defendants submitted a filing to the IHO indicating that (1) "'stay-put' should not operate to force the School to fund private instruction," (2) "[Plaintiffs] have openly acknowledged that the FWCL does not constitute the Student's educational placement;" (3) "the settlement agreement did not create an educational placement as a matter of law," and (4) "the Student attended the public school full-time during the 2005-2006 school year and as a result, her current educational placement is the public school."  Def. Br., Exh. A, p. 4210 (Adm. Record).  Throughout the proceedings, Defendants maintained their position that FWCL was not part of M.C.'s educational placement.

Plaintiffs cite *Gabel v. Board of Education*, 368 F. Supp. 2d 313, 324-25 (S.D.N.Y. 2005), for the proposition that a funding agreement should constitute a student's placement for the duration of the proceedings when the agreement "does not limit funding to a specific time period." Pl. Reply, p. 3.  "The United States Department of Education has opined that a child's then current educational placement would generally be taken to mean current special education and related services provided in accordance with a child's most recent IEP.  Therefore, the pendency placement is generally the last unchallenged IEP." *Gabel v. Bd. of Educ.*, 368 F. Supp. 2d 313, 324 (S.D.N.Y. 2005) (citing

*Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996)).  "However, if there is an agreement between the parties on placement during the proceedings, it need not be reduced to a new IEP, and it can supercede the prior unchallenged IEP as the then current placement." *Id*.  (citing *Bd. of Educ. v. Schutz*, 137 F. Supp. 2d 83 (N.D.N.Y. 2001)).  The court in *Gabel* went on to hold: "An agreement in which a Board of Education agrees to pay tuition to a private school makes that school the child's pendency placement unless the stipulation is explicitly limited to a specific school year or definite time period."  *Id*. at 324-25 (citing *Zvi D. v. Ambach*, 694 F.2d 904, 908 (2d Cir. 1982)).

Unlike the agreement in *Gabel*, the plain language of all of the agreements during these proceedings regarding the funding of M.C.'s private placement from August 2006 forward has included funding only for a definite time period.  The opening sentence of the IHO's August 15, 2006 Order memorializing the parties' initial agreement provides: "Parties entered into a mutual agreement concerning the educational placement of the Student *during the pendency of this matter. This agreement follows:*"  Pl. Br., Exh. B.  Therefore, the phrase "during the pendency of this matter" does not itself define the length of the parties agreement; rather, its simply sets the context for the agreement of the parties, the terms of which are provided in the immediately following paragraph.  That next paragraph then provides the details of that agreement, which are that the Defendants would pay until the "matter is resolved, *either through resolution between the parties or by Order of the IHO*."  Pl. Br., Exh. C.  By agreement then, the parties established an end date for the payment by Defendants–either resolution by the parties or by order of the IHO.  Subsequently, the parties made the time period for Defendants' payments even more specific–December 4, 2006.

In their Reply, Plaintiffs also argue that private instruction was part of M.C.'s ongoing educational placement based on her attendance at FWCL during the previous years under the 2004 Agreement. Plaintiffs reason that, because private instruction at FWCL at Defendants' expense was part of M.C.'s "operative placement" under the 2004 Agreement and because private instruction funded by Defendants was part of the parties' agreement in August 2006, private instruction is the "operative placement" under which M.C. has actually been receiving her education before and during this dispute. Although Plaintiffs correctly identify these historical facts and the fact that M.C. continues to be enrolled in a private setting, such facts do not change the express terms of the parties' agreements as to the duration of the funding for the private placement by Defendants. That funding expressly terminated on December 4, 2006, and no order of the IHO or the Court has reinstated that funding.

Finally, Plaintiffs explain that "educational placement" means "program" not the particular institution where the program is implemented, in relation to the fact that M.C. moved from FWCL to ILS. When a student's educational program becomes unavailable, the stay-put provision requires that a similar program be found for the student. *See, e.g.*, *McKenzie v. Smith*, 771 F.2d 1527-33 (D.C. Cir. 1985); *F.S. v. Dist. of Columbia*, 2007 WL 1114136 (D.D.C. 2007). However, the concern on this inquiry is not that Plaintiffs transferred M.C. from FWCL to ILS when her program was no longer available at FWCL, but rather whether Defendants should be paying for her private tutoring given the terms of the parties' agreements and the IHO's orders. As set forth above, absent a ruling by the IHO or this Court, Defendants' responsibility to pay for M.C.'s private placement terminated on December 4, 2006.

14

**CONCLUSION**

Based on the foregoing, the Court now **DENIES** the Motion to Enforce Stay-Put Placement [DE 41].

SO ORDERED this 27th day of May, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record